GREENE COUNTY RURAL ELECTRIC COOPERATIVE et al., Appellees,
v. FRED W. NELSON et al., Appellants; WINNEBAGO RURAL
ELECTRIC AND COOPERATIVE ASSOCIATION et al.,
Interveners, Appellees.

No. 46409.

FEBRUARY 8, 1944.

John M. Rankin, Attorney General, and Jens Grothe,
Assistant Attorney General, for appellants.

Wisdom & Wisdom and Stephens & Buckingham, all of Des
Moines, for appellees.

Thompson & Weible, of Forest City, and Glenn D. Kelly, of Davenport, for intervener-appellees.

MILLER, J.—Plaintiffs' petition asserts that they are rural electric co-operatives, organized under chapter 390.1, Code, 1939, engaged in operating electric transmission lines upon the co-operative plan and not for profit and that defendants are threatening to assess their lines under chapter 340, Code, 1939; that defendants are without right, jurisdiction, or authority to so proceed. The prayer was for a permanent injunction. Two interveners adopted the allegations of the petition and asked for similar relief. Defendants' answer denied that plaintiffs were in law or in fact organized or operated on a nonprofit basis; asserted that chapter 340 applies to plaintiffs, and alleged further that, if plaintiffs are nonprofit associations, the exemption in their favor, appearing in section 7089, was repealed by implication by chapter 248, Acts of the Forty-ninth General Assembly.

At the trial most of the evidence consisted of stipulations and exhibits. The facts are not disputed. The court determined that plaintiffs are in law and in fact organized and operated on a nonprofit basis; that chapter 248, Acts of the Forty-ninth General Assembly, did not repeal the exemption contained in section 7089; and, accordingly, enjoined defendants from assessing plaintiffs under chapter 340 of the Code. The defendants appeal to this court, asserting five propositions for reversal.

I. The Commission's first two propositions challenge the trial court's finding that plaintiffs are in law and in fact organized and operated on a nonprofit basis. They will be considered together.

Prior to 1935 co-operatives were organized under what is now known as chapter 390, Code, 1939. By chapter 94, Acts of the Forty-sixth General Assembly (1935), it was provided that co-operatives previously organized under chapter 390 should continue to operate thereunder but any new co-operative should be organized under said chapter 94, now codified as chapter 390.1, Code, 1939. Plaintiffs were organized in 1937 under said chapter 390.1. This chapter permits the organization of co-operatives for profit as well as those not for profit.

Plaintiffs' articles of incorporation are in evidence. The parties stipulated regarding their operations as follows:

"It is further stipulated and agreed by the parties hereto that the facts are, which shall be considered as the evidence in this case, that in the operation of the business of the plaintiffs in this case, and cooperative associations similarly situated, each member holds one membership only, that is by a certificate of membership, has only one vote in the management of the business of the plaintiffs, and cooperative associations similarly situated; that all members are required to be patrons and business is done with the members only; that no dividends or interest has ever been paid by the plaintiffs or other cooperative associations similarly situated to members on the membership or the issuing price thereof; that the earnings or excess charges are distributable to the members only on a patronage basis in proportion to the business done by the members through the cooperative corporation and other corporations similarly situated."

The articles of incorporation are consistent with the method of operation above set forth. We are satisfied that plaintiffs are not organized or operated for profit. There is no return on capital invested and can be none. The membership fee of $2.50 is nominal and nothing more than a deposit to establish credit, such as many public utilities require of their patrons. The income is that received for business done with members. Only members are dealt with. Any net earnings are returned on the basis not of membership or investment but of business done. It is literally no more than a return of an overcharge originally assessed to provide a margin of safety in the operation of the business. Co-operative corporations and associations so organized and operated have been recognized repeatedly as being not operated for profit.

In Hanna on "The Law of Cooperative Marketing Associations," section 21, page 50, it is stated:

"The essential idea in the term 'non-profit' is clearly that such corporations are not designed primarily to pay dividends on invested capital but to provide a system and method by which the member can effect the sale of his products."

In "The Law of Co-operative Marketing," by Evans and Stokdyk, page 3, it is stated:

"The basic legal and economic principles of the cooperative scheme are limitation upon the voting power and restrictions upon alienation of voting stock or membership interests, thus preserving the dispersion of control and keeping the control within the class affected; limiting the use of proxies, thus fixing the responsibility upon the cooperators; the limitation of earnings upon invested capital, thus insuring the non-profit character of the scheme; and the distribution of earnings or savings upon a patronage basis, that is, according to the quantity or value of products marketed through the association by the respective members."

In 90 University of Pennsylvania Law Review 151, it is stated:

"A fundamental principle applicable to all cooperatives is the avoidance in the organization of entrepreneur profit. Patronage refunds, therefore, are not to be considered as a division of the profits. They are rather a return of the overcharge."

In United States v. Rock Royal Co-Operative, 307 U. S. 533, 564, 59 S. Ct. 993, 1008, 83 L. Ed. 1446, 1465, the court states:

"The producer cooperative seeks to return to its members the largest possible portion of the dollar necessarily spent by the consumer for the product with deductions only for modest distribution costs, without profit to the membership cooperative and with limited profit to the stock cooperative. It is organized by producers for their mutual benefit."

As above stated, chapter 390.1 permits the organization of two kinds of co-operatives, membership co-operatives operated without profit and stock co-operatives that may be operated for profit. Plaintiffs are membership co-operatives and are not operated for profit. The court was right in so holding.

II. The Commission's third proposition is that section 7089 must be strictly construed in favor of the state and against those claiming exemption from taxation and that the burden is on plaintiffs to clearly bring themselves fairly within

366

the exemption from taxation. This is familiar doctrine. Plaintiffs meet its requirements.

Chapter 340, Code, 1939, provides that the State Tax Commission shall determine the actual value, for the purposes of taxation, of all electric transmission lines of companies defined by section 7089 as those owning or operating such lines within the state and wholly or partly outside cities and towns, ''except cooperative corporations or associations which are not organized or operated for profit.'' Plaintiffs are clearly within the language of the exception.

■ III. The Commission's fourth proposition asserts that we should so construe the statute, if possible, that it will not constitute an unconstitutional discrimination in taxation. Our holding in Divisions I and II, supra, that plaintiffs come within valid provisions in favor of corporations not for profit disposes of this contention.

■ IV. The Commission's fifth and final proposition is that chapter 248, Acts of the Forty-ninth General Assembly, repealed by implication the exception contained in section 7089 and rendered plaintiffs' property subject to taxation. This proposition is inconsistent with the other four propositions urged by the Commission. In each of the foregoing propositions the Commission contends that plaintiffs are organized and operated for profit. The fifth contention assumes that plaintiffs are not so organized or operated. The argument is extremely technical and quite ingenious. We find no merit in the contention.

The exception appearing in section 7089 was inserted therein through the enactment of section 17-a1 of S. F. 183 by the Fortieth Extra General Assembly in 1924. The last sentence of this section was codified as section 7102 of the Code. Sections 7089 and 7102 of the Code, 1924, appear in identical form in the Code, 1939. By these sections co-operative corporations or associations not for profit are not assessed but the interests of the members are assessed as part of the real estate served by the transmission lines. As to corporations for profit, their property is assessed under chapter 340, but section 6944, subparagraph 20, exempts the capital stock from taxation.

Chapter 248, Acts of the Forty-ninth General Assembly,

became law through the passage of a bill known as S. F. 79. As originally introduced this bill provided for a gross-receipts tax of one per cent on the income of rural electric co-operatives and for the repeal of section 7102 of the Code. Senate File 79 was drastically revised by amendment. In the course of such amendment, an attempt to incorporate in it the repeal of the exception contained in section 7089, and repeal of section 7102, Code, 1939, was voted down. As eventually passed, S. F. 79 exempted the property of rural electric co-operatives and the interests of their members from taxation during 1941 and 1942 and provided that "from and after January 1, 1943, such corporations shall be taxed as provided in Chapter 340 of the Code of 1939."

At the fiftieth general assembly in 1943, two bills were introduced: S. F. 145 provided for striking the words "except cooperative corporations or associations which are not organized or operated for profit" from section 7089 and for the repeal of section 7102; H. F. 304 was identical with S. F. 145. Neither of the two bills was passed.

The Commission contends that by chapter 248, section 2. Acts of the Forty-ninth General Assembly, the legislature repealed by implication the exception contained in section 7089 and all of the provisions of section 7102, because it was clearly the intention of the legislature to provide that, after January 1, 1943, rural co-operatives, and the interests of their members, were to be subject to the same treatment under chapter 340 and section 6944, subparagraph 20, as corporations for profit engaged in the same business.

For us to sustain this contention, we would accomplish, through the dubious method of interpretation and repeal by implication, the very thing which the legislature expressly refused to do by specific legislation. We are satisfied that the legislature meant that, after January 1, 1943, the nonprofit rural electric co-operatives, and the interests of their members, should be subject to the provisions of chapter 340 of the Code as it was written rather than as it would read, with the exception in section 7089 and the provisions of section 7102 repealed by implication. We cannot impute to the legislature, through the guise of interpretation, an intention which is clearly and unquestion-

ably negatived by explicit action taken by it. The trial court was right in holding that there was no repeal by implication.

The foregoing disposes of all of the propositions urged by the Tax Commission. We have not attempted to answer in detail all of the arguments advanced. To do so would unduly prolong this opinion. Neither have we attempted to incorporate or refer to many of the contentions asserted in the unnecessarily lengthy briefs of appellees, which total some two hundred and fifty pages. The issues herein are clearly defined. The decree is right, and it is—Affirmed.

All Justices concur.