73 P.3d 731

STATE of Idaho, Plaintiff–Respondent,

v.

James David MAYNARD, Defendant–Appellant.

No. 27582.

Court of Appeals of Idaho.

June 3, 2003.

Stewart A. Morris, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

SCHWARTZMAN, Judge Pro Tem.

James David Maynard appeals from his conviction for felony insurance fraud, I.C. § 41–293(1)(f), (3). We affirm.

## I.

## FACTUAL AND PROCEDURAL SUMMARY

In October 1996, Maynard suffered an injury while working for Markham Painting, Inc. (Markham), for which Liberty Mutual Insurance Company (Insurer) was the surety under Idaho's worker's compensation laws. Maynard filed a claim for compensation with the Idaho Industrial Commission (Commission). A dispute later arose as to whether Maynard needed a second surgery. In an August 6, 1999, deposition pursuant to that claim, Maynard answered questions about his post-injury work history and efforts to establish a painting business, responding in part as follows (collectively "statement"):

Q. With the exception of Professional Fire Fighters of Idaho, have you had any other employment since Shinn [, i.e., from approximately February 1999 until August 6, 1999]?

A. No.

Q. Haven't tried any painting or drywall stuff?

A. No.

After a videotape showed him painting in July 1999, Maynard admitted that the statement was false. He subsequently testified before the Commission that he had worked sporadically at painting in the summer of 1999. At Maynard's subsequent criminal trial, uncontroverted evidence established that Maynard had made the false statement because he believed that without it he would be unable to obtain medical care from Insurer.

On January 21, 2000, the state charged Maynard with felony insurance fraud, alleging that he:

on or about the 6th day of August 1999 in the County of Ada, State of Idaho, did willfully, and with the intent to defraud [Insurer] ... make a false statement and/or material misrepresentation to obtain worker's compensation benefits, to-wit: defendant stated he had not worked as a painter since January of 1999 and up to August 6, 1999.

Maynard waived a preliminary hearing and was bound over for trial. Thereafter, on April 11 the Commission approved a Stipulation and Agreement of Lump Sum Discharge and Order of Approval and Discharge (Agreement), which resolved the claim between Maynard, Markham, and Insurer.

The state later moved to amend the charging information so as to delete the words "and/or material misrepresentation." The trial court heard argument on the state's motion to amend as well as on two motions and a requested jury instruction filed by Maynard.

Maynard's motion in limine sought to admit into evidence the Agreement and testimony from John Greenfield, his worker's compensation attorney, and also sought to exclude evidence of a prior felony conviction. Maynard argued that the Agreement was admissible to show that Insurer knew of, waived, and was not harmed by his false statement. Maynard further asserted that Greenfield's testimony would prove that Maynard was entitled to the surgical benefit

he sought and thereby disprove the requisite criminal intent and purpose of his statement.

Maynard also moved to remand the case to the magistrate division of district court for a preliminary hearing or a misdemeanor trial, arguing that the state's amended information eliminated the allegation of material misrepresentation and thus no longer stated a felony charge against him, but rather only a misdemeanor under I.C. § 72–801.[1] Maynard further argued that since his false statement was not material to his claim for additional surgical benefits, he could not have the requisite *mens rea* or criminal intent required under I.C. § 41–293(1)(f). Maynard's requested instruction sought to advise the jury that if it found that Insurer owed him those additional benefits regardless of whether he had worked, then his false statement was not made to obtain or extend benefits.

The district court granted the state's motion to amend the information and Maynard's motion *in limine* as to his prior conviction, but deferred ruling on the other issues raised by Maynard. Thereafter, Maynard filed several proposed jury instructions, which the district court refused to adopt.[2] Two days later, the court permitted the state to file a second amended information to modify the alleged "intent to defraud" to "intent to deceive" so as to reflect the statutory language. Maynard did not object to this change, but continued to challenge the information's exclusion of the words "and/or material misrepresentation."

At trial, the district court excluded the Agreement and Greenfield's testimony as irrelevant. A jury subsequently returned a guilty verdict. The court entered a judgment of conviction and imposed a three-year unified sentence, with one year determinate, which it then suspended, and placed Maynard on three years' probation.

## II.

## ANALYSIS

On appeal, Maynard argues that the district court's rulings deprived him of a fair trial. Specifically, he asserts that the court erroneously: (1) permitted the state to amend its charging information to eliminate the allegations of material misrepresentation and intent to defraud; (2) refused to remand his case after such amendments; (3) denied his requested jury instructions on the elements of and defenses to insurance fraud; and (4) excluded the Agreement and Greenfield's testimony. The state asserts that Maynard misconstrues I.C. § 41–293(1)(f) and that materiality is not an element of insurance fraud thereunder. Combined, the parties raise issues of whether and to what extent the elements of and defenses to the common law offense of fraud are incorporated into the statutory offense of insurance fraud under I.C. § 41–293. The principle issue is narrower, however, being whether I.C. § 41–293(1)(f) requires the state to prove that Maynard's false statement was material to his worker's compensation claim.

### A. Construction of I.C. § 41–293

The application and construction of statutes present questions of law over which we exercise free review. *State v. Schumacher*, 131 Idaho 484, 485, 959 P.2d 465, 466 (Ct. App.1998). Where a statute's language is plain and unambiguous, we must give effect to the statute as it is written and without engaging in statutory construction. We as-

1. Idaho Code § 72–801, a provision of Idaho's worker's compensation law, establishes a misdemeanor offense for making false statements and representations for the purpose of obtaining benefits and imposes civil forfeiture sanctions. *See Berglund v. Potlatch Corp.*, 129 Idaho 752, 755–57, 932 P.2d 875, 878–880 (1996). Idaho Code § 72–801 states:

    If, for the purpose of obtaining any benefit or payment under the provisions of this law, either for himself or for any other person, any one wilfully makes a false statement or representation, he shall be guilty of a misdemeanor and upon conviction for such offense he shall forfeit all right to compensation under this law.

2. Maynard's Proposed Instruction 1 discussed the requisite intent as being one to cause Insurer's financial loss or obtain some financial gain to which he was not otherwise entitled. His Instruction 2 asserted a materiality element. Proposed Instruction 3 contended that ignorance, mistake, misfortune, or accident disproved the required *mens rea*. Instruction 4 required a bad faith showing and asserted a good faith defense.

sume that the legislature meant what it clearly stated in the statute unless the result is "palpably absurd." *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999). When analyzing the language and application of a statute, we must give the words their plain, usual, and ordinary meaning, and we must give effect to the statute's every word and clause. *State v. Swader*, 137 Idaho 733, 738, 52 P.3d 878, 883 (Ct.App.2002). When we engage in statutory construction, our duty is to give effect to the legislature's intent as ascertained by examining the statute's text, the meaning of its words, its history, and its underlying policy. Where ambiguity exists as to the elements of or potential sanctions for a crime, we strictly construe the statute in favor of the defendant. *Rhode*, 133 Idaho at 462, 988 P.2d at 688.

■ Idaho Code § 41–293(1)(f) defines insurance fraud, in relevant part, as "[a]nyone willfully making a false statement or material misrepresentation, with the intent of deceiving an insurer, to obtain or extend worker's compensation benefits." The language of I.C. § 41–293(1)(f) refers to the prohibited conduct in disjunctive terms, that is, a willfully made false statement *or* a willfully made material misrepresentation. The statute's text employs the adjective "material" to modify the noun "misrepresentation," but does not employ that adjective to modify the term "false statement." *Cf. Swader*, 137 Idaho at 739, 52 P.3d at 884. Consequently, the plain and unambiguous language of I.C. § 41–293(1)(f) prohibits a false statement made with the requisite intent and purpose, regardless of the materiality of that statement.

Our conclusion that I.C. § 41–293(1)(f) does not establish a materiality element for insurance fraud accomplished by a willfully false statement finds support in the statute's legislative history. Idaho Code § 41–1325, the predecessor of I.C. § 41–293(1)(f), was enacted in 1981 in support of antifraud efforts by Idaho's Department of Insurance.

1981 Idaho Sess. Laws, ch. 23 preamble, § 3, 39, 41. In that original enactment, I.C. § 41–1325(1) imposed an element of materiality with regard to false, incomplete, or misleading information, as did subsection (2) for conduct assisting, abetting, soliciting, or conspiring to violate subsection (1).[3] *Id.* at § 3, 41.

The legislature redesignated I.C. § 41–1325 as I.C. § 41–293, as part of its 1994 effort to further define insurance fraud. 1994 Idaho Sess. Laws, ch. 219 at 696, 699. That legislation sought to consolidate the existing insurance fraud law into a single statute and to define insurance fraud more specifically. Statement of Purpose, H.B. 789, (1994). The redesignated section was expanded with five new subsections enumerating additional types of insurance fraud, including that currently defined by subsection (1)(f). 1994 Idaho Sess. Laws, ch. 219 at 699, 700.

The Idaho legislature did not draft these new subsections to be identical in their requirement for an element of materiality. For example, subsection (1)(c) expressly sets forth a materiality element for fraud carried out by way of a materially false or altered insurance application. Subsections (1)(e) and (g), however, do not express a materiality element for fraud in falsifying or altering a bill for medical services, or for offering or accepting an inducement to file a false claim. Subsection (1)(f), the one of import in the instant case, sets forth an express materiality element for insurance fraud based upon a misrepresentation, but does not include such an element for insurance fraud based upon a false statement. The legislature, in these 1994 amendments, could have continued to require a materiality element by merely adopting the materiality language set forth in the predecessor I.C. § 41–1325. The legislature, however, did not do so. Rather, it chose to require proof of materiality for some

---

**3.** Idaho Code § 41–1325(1) established a felony offense as follows:

    *FALSE INFORMATION.* Any person who, with the intent to defraud or deceive an insurer for the purpose of obtaining any money or benefit[,] presents or causes to be presented to any insurer any written or oral statement ...

as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains false, incomplete, or misleading information concerning any fact or thing *material* to such claim....
(Emphasis added).

types of insurance fraud under I.C. § 41–293 and not to require it in other types thereunder.

We conclude that the plain language of I.C. § 41–293(1)(f) does not establish that a willfully false statement made with the requisite intent must be material to a compensation claim in order to convict an individual of insurance fraud. We recognize that, under our holding today, an immaterial false statement made with the intent to deceive an insurer to obtain or extend benefits can be punished by up to fifteen years in prison, a fine of up to $15,000, or both. It is not, however, for the judiciary to inquire into the legislature's wisdom and propriety in this matter. *State v. Clark,* 88 Idaho 365, 376, 399 P.2d 955, 961 (1965). "It is the duty of the court to construe the law as it is, not as some would like to have it." *State v. Browne,* 4 Idaho 723, 727, 44 P. 552, 553 (1896).

### B. Other Issues on Appeal

Having reached the conclusion that insurance fraud by false statement does not include an element of materiality under I.C. § 41–293(1)(f), we may address Maynard's remaining issues on appeal in short order. First, the court did not err in allowing the state to amend the information to limit its pleading to one of the two alternatives permitted under I.C. § 41–293(1)(f). No new, additional or different offense was charged. *See State v. Tapia,* 127 Idaho 249, 253, 899 P.2d 959, 963 (1995). Regarding the second amendment, we do not consider Maynard's argument on appeal because he did not oppose the substance of that amendment which was made to merely conform to the statute's "intent of deceiving" language.

Second, Maynard argues that the trial court erred in not giving his proposed instructions on materiality and requisite criminal intent. We note that the district court, having determined that Maynard's false statement need not be material, correctly instructed the jury on the essential elements of the offense. Maynard's proposed instructions do not accurately reflect the applicable law in this regard, and the court properly refused to use them.

Third, the district court excluded the Agreement and Greenfield's testimony as irrelevant. We review questions of relevance *de novo. State v. Raudebaugh,* 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). Maynard sought to establish, through admission of the Agreement, that when Insurer entered into the Agreement with him, it knew of, waived and accordingly was unharmed by his falsehood, in other words, that his false statement was immaterial to the question of his obtaining or extending benefits. Given our holding that insurance fraud committed by way of a willfully false statement under I.C. § 41–293(1)(f) does not include an element of materiality, we conclude that the district court did not err in excluding the Agreement.

Maynard also sought to admit Greenfield's testimony to establish the facts and circumstances of the Agreement and to disprove the materiality of Maynard's statement to Insurer, *i.e.,* that Maynard lacked the requisite criminal intent to commit the crime of insurance fraud. We likewise conclude that the district court did not err in excluding as irrelevant Greenfield's proposed testimony on these points. *See State v. Arrasmith,* 132 Idaho 33, 40, 42, 966 P.2d 33, 40, 42 (Ct.App.1998).

### III.

### CONCLUSION

We affirm Maynard's judgment of conviction for the offense of insurance fraud under I.C. § 41–293(1)(f).

Chief Judge LANSING and Judge GUTIERREZ concur.